UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nicholas Earley,

          Plaintiff,

v.

Paul Schnell, *the Minnesota Commissioner of Corrections in his official capacity*, Edward Miles, *in his individual capacity,* et al.,

          Defendants.

Case No. 19-cv-1085 (WMW/HB)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

---

This matter is before the Court on the August 31, 2020 Report and Recommendation (R&R) of United States Magistrate Judge Hildy Bowbeer. (Dkt. 53.) The R&R recommends denying Plaintiff Nicholas Earley's motion for summary judgment and granting in part Defendants' motion for summary judgment or judgment on the pleadings.[1] The parties filed timely objections to the R&R. For the reasons addressed below, the parties' objections are overruled and the Court adopts the R&R.

---

[1] Defendants' motion is titled "Defendants' motion for judgment on the pleadings and for summary judgment." The R&R correctly observes that the same legal standard applies to a motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss. *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) ("A grant of judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)).

## BACKGROUND[2]

Plaintiff Nicholas Earley is a citizen of the State of Minnesota who commenced this action while he was an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota. Presently, Earley is on supervised release under the supervision of the Minnesota Department of Corrections (DOC). Earley initiated this action against Defendant Edward Miles, the Warden of the Minnesota Correctional Facility in St. Cloud, in his individual capacity; Defendant Paul Schnell, the Commissioner of the Minnesota Department of Corrections, in his official capacity; and two unidentified individuals who are responsible for enforcing the alleged constitutional violations.

As relevant here, in December 2016, Earley pleaded guilty in Minnesota state court to first-degree driving while impaired. In exchange for his guilty plea, the state agreed to dismiss the accompanying domestic-assault charges in the criminal complaint. Earley's fiancée was the alleged victim of domestic assault.

One condition of Earley's supervised release, Standard Condition 6, prohibits Earley from engaging in "direct or indirect contact with any person deemed to be a victim by the [Minnesota] Department of Corrections." Pursuant to DOC Policy 302.100, a "victim" is any individual named as a victim in the criminal complaint even if the charged offense that involves the named victim is dismissed as a part of a plea agreement. Under DOC Policy 302.100, Earley's fiancée is a victim of Earley's domestic-assault offenses, even though those charges were dismissed. Therefore, Earley is not permitted to have any

---

[2] Because the R&R provides a detailed factual and procedural background, the Court briefly summarizes the nature and course of this litigation.

2

direct or indirect contact with his fiancée during the period of his supervised release. As Earley's fiancée is the mother and primary caregiver of Earley's minor son, N.E., Standard Condition 6 restricts Earley's ability to spend time with N.E.

Earley commenced this lawsuit against Schnell, Miles, and two other DOC employees on April 22, 2019, alleging that Defendants violated his "fundamental right to association" under the Fourteenth Amendment, First Amendment, and Eighth Amendment of the United States Constitution. Earley seeks declaratory and injunctive relief, as well as damages, costs, and attorneys' fees.

Before the Court are cross-motions for summary judgment. The R&R recommends denying Earley's motion for summary judgment and granting Defendants' motion for summary judgment on all claims except for Earley's First Amendment claim against Schnell. The parties filed timely objections to the R&R.

## ANALYSIS

A district court reviews *de novo* those portions of an R&R to which an objection is made and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). A district court reviews for clear error any aspect of an R&R to which no objection is made. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). As Earley is proceeding *pro se*, the Court liberally construes his complaint and objections. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Both Earley and Defendants filed objections, which the Court addresses in turn.

### I.     Earley's Objections to the R&R

Earley asserts four objections to the recommendations of the R&R. Earley objects to the R&R's recommendation to grant Defendants' motion for summary judgment as to Earley's claims relating to his right to association with his son, Schnell's alleged violation of the Fourteenth Amendment, and Earley's request for attorneys' fees. Earley also objects to the R&R's recommendation to deny his motion for summary judgment as to his First Amendment right to freedom of association with his fiancée. The Court addresses each objection in turn.

#### A.     Earley's Constitutional Claims Regarding His Son

Earley objects to the R&R's conclusion that Standard Condition 6, which restricts Earley from contacting his fiancée, does not infringe his First Amendment right to association with N.E., Earley's minor son. The *indirect* effect that Standard Condition 6 has on his relationship with his son, Earley argues, "is not a constitutionally sufficient distinction" to absolve Defendants of a First Amendment violation.

Earley's argument is unavailing. Restrictions that indirectly limit a fundamental right do not necessarily violate the First Amendment. *See, e.g.*, *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51 (1988) (concluding that "incidental effects of government programs" on the First Amendment right to practice religion do not require the government to offer a compelling justification for its otherwise lawful actions); *Bell v. Wolfish*, 441 U.S. 520, 550–52 (1979) (concluding that a regulation prohibiting prisoners from receiving hardback books unless mailed directly from publishers, book clubs, or bookstores did not violate the First Amendment even though the rule might have

incidental consequences such as increasing the cost of obtaining publish materials). Such restrictions that have an "incidental or unintended effect on the family" do not amount to an infringement of Earley's right to freedom of association with his family. *Doe v. Miller*, 405 F.3d 700, 710 (8th Cir. 2005).

The magistrate judge correctly observed that, even though Standard Condition 6 likely will have an effect on Earley's relationship with his son, the effect is too indirect to violate Earley's constitutional right to freedom of association. *See Lyng*, 485 U.S. at 450–51. Earley fails to identify any fact or legal authority that the R&R omits, overlooks, mischaracterizes or misapplies. Nor does Earley's objection, even when liberally construed, address the R&R's legal analysis. Having carefully reviewed *de novo* this portion of the R&R in light of Earley's objection, the Court overrules Earley's objection as to his constitutional claims regarding his son.

    **B.**  **Earley's Fourteenth Amendment Claims Against Schnell**

The R&R recommends that the Court grant Defendants' motion for summary judgment with respect to Earley's substantive-due-process claim against Schnell. Earley objects, arguing that the magistrate judge erred by failing to apply strict scrutiny when determining whether his substantive due process rights were violated.

Substantive due process restricts what the government may do in its legislative and executive capacities. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). But the criteria to determine a substantive-due-process violation varies depending on the alleged infringing act. *Id.* To succeed on a substantive-due-process challenge to a state-imposed condition of supervised release, a plaintiff must prove that the imposition of the condition

5

violated the plaintiff's fundamental rights and that the violation is "conscience-shocking." *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181–82 (8th Cir. 2003); *see also Bandy v. Comm'r of Corr.*, No. 12-cv-2209 (JRT/LIB), 2016 WL 8732632, at *14 (D. Minn. Jan. 29, 2016), *report and recommendation adopted*, 2016 WL 1271469 (D. Minn. Mar. 31, 2016), *aff'd*, 683 F. App'x 551 (8th Cir. 2017); *Hartman v. Fabian*, No. 11-905 (DSD/AJB), 2012 WL 6737772, at *5–*6 (D. Minn. Dec. 28, 2012).  To be conscience-shocking, official action must involve "the most severe violations of individual rights that result from brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (internal quotation marks omitted).

Earley's argument for the application of strict scrutiny was properly considered and rejected by the magistrate judge in the R&R, citing *Slusarchuk*, 346 F.3d at 1181–82. Earley fails to identify any fact or legal authority that the R&R omits, overlooks, mischaracterizes, or misapplies.  Accordingly, having carefully reviewed *de novo* this portion of the R&R, the Court overrules this objection.

### C. Earley's Claim for Attorneys' Fees

Earley objects to the R&R's recommendation that the Court dismiss Earley's claims for attorneys' fees.  Because his First Amendment claim survives, Earley argues, he may be entitled to attorneys' fees on that claim if he prevails.

A district court may award attorneys' fees to a plaintiff who succeeds in a Section 1983 action against a state official sued in his or her official capacity.  *Hutto v. Finney*, 437 U.S. 678, 693–98 (1978) (holding that the Eleventh Amendment does not prevent an award of attorneys' fees against officers of a state department of corrections sued in their official

capacity). But a *pro se* litigant may not recover attorneys' fees in a civil rights action. *Kay v. Ehrler*, 499 U.S. 432, 435–38 (1991).

The R&R recommends granting Defendants' motion for summary judgment as to attorneys' fees. A plaintiff represented by counsel who succeeds on a First Amendment claim may be entitled to attorneys' fees. *See, e.g.*, *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980). But because Earley is not represented by counsel, even if his First Amendment claim succeeds, he cannot recover attorneys' fees. *See Ehrler*, 499 U.S. at 435–38. Having carefully reviewed *de novo* this portion of the R&R, the Court overrules Earley's objection to this recommendation.[3]

## II. Defendants' Objection to the R&R

Defendants object to the R&R's recommendation that the Court deny Defendants' motion for summary judgment and judgment on the pleadings as to Earley's First Amendment claim against Schnell. First, Defendants argue that the magistrate judge erred by failing to apply the legal standard articulated in *State v. Schwartz*, 628 N.W.2d 134, 141 (Minn. 2001). Second, Defendants argue that, even if the Court applies the legal test articulated in *Turner v. Safley*, 482 U.S. 78, 89 (1987), as recommended in the R&R, the Defendants' motion for summary judgment should be granted.

---

[3] Earley's objection to the R&R's recommendation to deny Earley's motion for summary judgment as to Earley's freedom of association claim with respect to his fiancée is addressed with Defendants' objection in Part II.B of this Order.

### A.     Minnesota Supreme Court Standard

Defendants argue that the legal standard articulated by the Minnesota Supreme Court in *Schwartz* should be used to analyze Earley's First Amendment claim against Schnell. The *Schwartz* standard requires a condition of release to be reasonably related to the offense and not unduly restrictive of the offender's liberty. *Schwartz*, 628 N.W.2d at 141. Defendants argue that if Earley had brought this action in a Minnesota state court, that court would have applied the *Schwartz* standard.

This argument is unavailing, because the appellant in *Schwartz* challenged his conditions of release pursuant to Minnesota statutes and the separation-of-powers provision of the Minnesota Constitution. *See Schwartz*, 628 N.W.2d at 138. In this case, Earley challenges his conditions of release pursuant to the United States Constitution. The decisions of the Supreme Court of the United States are binding authority in all courts, federal and state, on issues of federal law, such as the United States Constitution. Because Earley is relying on the First Amendment to the United States Constitution as the basis for this claim, the R&R correctly applies federal precedent by relying on *Turner*, 482 U.S. at 89. Even if Earley had brought this action in a Minnesota state district court, that court would have been bound by *Turner*. Accordingly, the Court overrules Defendants' objection.

### B.     *Turner* Test

Earley and Defendants object to the R&R's recommendation to deny their respective motions for summary judgment as to Earley's First Amendment freedom-of-association claim that pertains to Earley's fiancée. The parties do not dispute that Earley

8

and his fiancée's relationship is protected by the First Amendment right to freedom of association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545–46 (1987); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684–86 (1977). The parties object to the R&R's application of the *Turner* test, however.

The Supreme Court held in *Turner* that a burden on a prisoner's fundamental right does not violate the United States Constitution if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Courts apply a four-factor test to determine whether the burden is reasonably related to legitimate penological interests: (1) whether there is a rational connection between the policy and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) the impact an accommodation of the asserted constitutional right would have on prison staff, other inmates, and prison resources; and (4) the absence of obvious and easy alternatives that would fully accommodate the prisoner. *Id.* at 89–90. Although *Turner* applies specifically to prisoners who are *in* prison, courts have created a modified *Turner* test for prisoners who are subject to different categories of detention. *See, e.g.*, *Ivey v. Johnston*, No. 18-cv-1429 (PAM/DTS), 2019 WL 3334346, at *5 (D. Minn. July 24, 2019) (applying a modified *Turner* test to civil detainees).

Applying the modified *Turner* test here, the R&R concludes that a genuine issue of material fact exists as to whether there is a rational connection between Standard Condition 6 and the goals sought to be advanced by the state with respect to Earley. The R&R also concludes that the record is not sufficiently developed to allow the Court to analyze the

9

third and fourth *Turner* factors. The R&R recommends denying both Earley's and Defendants' motions for summary judgment as to this claim.

Earley argues that the R&R applies the wrong legal standard. Because he is no longer incarcerated, Earley contends, the Court should apply strict scrutiny. But Earley offers no legal authority that supports this argument. As the R&R persuasively observes, "the basic responsibility of the state to the inmate and those around him remains constant despite the change in the degree of physical custody." *Felce v. Fiedler*, 974 F.2d 1484, 1495 (7th Cir. 1992). Supervised release is a form of incarceration, and courts have found little reason to distinguish supervised release from incarceration when determining the constitutional standard of protection. *Id.* Therefore, the Court overrules this aspect of Earley's objection.

If the Court applies the modified *Turner* test, Defendants argue, the Court should do so in a way that takes into account the differences between supervised release and incarceration. Defendants contend that, because the *Turner* test is designed to address the constitutional rights of those who are incarcerated, the *Turner* test fails to consider whether Standard Condition 6 is reasonably related to "legitimate concerns of supervised release, including rehabilitation, supervision, public safety, and protecting victims." Defendants are correct that some of the *Turner* factors do not precisely address supervised release. But the R&R applies a modified *Turner* test and, in doing so, addresses the differences between incarceration and supervised release. Defendants' objection merely asks the Court to do what the R&R recommends, namely, to consider the unique aspects of supervised release.

As the R&R addresses how the *Turner* test should be modified to apply to supervised release, the Court overrules Defendants' objection.

In summary, the R&R applies the correct legal standard. The R&R correctly concludes that there is a genuine dispute of material fact as to whether a rational connection exists between Standard Condition 6 and the goals sought to be advanced by the state with respect to Earley. Accordingly, the Court overrules the objections of both Earley and Defendants as to this aspect of the R&R.

### III.    Clear Error Review

The Court reviews the remainder of the R&R, to which no party specifically objects, for clear error. *See Grinder*, 73 F.3d at 795; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Having carefully performed this review, the Court finds no clear error and, therefore, adopts the R&R.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' objection to the August 31, 2020 R&R, (Dkt. 54), is **OVERRULLED**.

2. Plaintiff's objections to the August 31, 2020 R&R, (Dkt. 55), are **OVERRULLED**.

3. The August 31, 2020 R&R, (Dkt. 53), is **ADOPTED**.

4. Plaintiff's motion for summary judgment, (Dkt. 28), is **DENIED**.

5. Defendants' motion for summary judgment or for judgment on the pleadings, (Dkt. 35), is **DENIED** as to Plaintiff's First Amendment claim based on his relationship with his fiancée and **GRANTED** in all other respects.

Dated:  February 17, 2021                                       s/Wilhelmina M. Wright
                                                                                                Wilhelmina M. Wright
                                                                                                 United States District Judge